IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MARIA C. T.,

                              Plaintiff,

               v.                                Civil Action No.
                                                 5:20-CV-1521 (DEP)


COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

<u>APPEARANCES</u>:                    <u>OF COUNSEL</u>:

<u>FOR PLAINTIFF</u>

LAW OFFICES OF KENNETH          JUSTIN M. GOLDSTEIN, ESQ.
HILLER, PLLC
6000 North Bailey Avenue, Suite 1A
Amherst, NY 14226

<u>FOR DEFENDANT</u>

SOCIAL SECURITY ADMIN.          JESSICA RICHARDS, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>DECISION AND ORDER</u>[1]

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled at the relevant times and, accordingly, is ineligible for the disability insurance ("DIB") and supplemental security income ("SSI") benefits for which she has applied.  For the reasons set forth below, I conclude that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.    <u>BACKGROUND</u>

Plaintiff was born in March of 1997, and is currently twenty-five years of age.  She was twenty-one years old at the time of her applications for benefits in July of 2018.  Plaintiff stands five-feet and two inches in height, and weighed approximately one hundred and eighty-nine pounds during the relevant time period.  At the time of the administrative hearing in this matter, plaintiff reported living with her parents in Camillus, New York.

In terms of education, plaintiff did not graduate from high school, but instead completed her GED in 2018.  She has worked on a short-term

---

[1]    This matter is before me based upon consent of the parties, pursuant to 28 U.S.C. § 636(c).

basis in a number of different jobs, including in the areas of food service, retail, and package handling.  Plaintiff reports having been fired from her last job for poor attendance, including leaving without permission due to her anxiety and phobia of vomiting, after working for only five months.

Plaintiff alleges that she suffers from mental impairments including anxiety, depression, borderline personality disorder, and a phobia of vomiting.  She has treated for these impairments with sources at Circare's Behavioral Clinic and Upstate University Health System.

Plaintiff's anxiety and mood issues make it difficult to be around people.  She also has anxiety related to vomiting, causing her to panic if she has to be around anyone who is vomiting.  Plaintiff would like to eventually go to beauty school, but does not feel that she can handle the interaction involved right now; she also expressed that she has considered jobs that involve less contact with the public, but is not sure she has the ability to sufficiently focus and concentrate for such jobs at the current time. Around the time of the hearing in this matter, plaintiff had not been regularly attending her group therapy sessions because of difficulty getting out of bed, nervousness being around people, and difficulty completing the assigned homework.  In terms of activities, plaintiff goes to see movies in a less crowded theater once or twice a year, rarely goes out to eat at

restaurants, plays video games, watches movies at home, or goes for walks around the neighborhood with her boyfriend, and takes care of a dog and a cat.  She often sleeps during the day because she stays up late at night.  Plaintiff reported being able to take a family vacation to Disney in 2018, but while on that trip she experienced considerable anxiety at the park because of the crowds.  She also took a bus to visit her cousin in New Jersey for a month or more in 2019.

II.    PROCEDURAL HISTORY

A.    Proceedings Before the Agency

Plaintiff applied for DIB and SSI payments under Titles II and XVI of the Social Security Act, respectively, on July 2, 2018.[2]  In support of that application, she claimed to be disabled due to emetophobia (fear of vomiting), borderline personality disorder, hypochondriasis (excessive worry about becoming ill), anxiety, dysthymia (a chronic form of depression), fear of abandonment, and speech and language disabilities.

A hearing was conducted on February 26, 2020, by ALJ Kellie Wingate Campbell to address plaintiff's applications.  ALJ Campbell thereafter issued an unfavorable decision on March 16, 2020.  That opinion became a final determination of the agency on October 13, 2020, when the

---

[2]    In her application, plaintiff alleged an onset date of disability of April 15, 2018.

Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

B.     The ALJ's Decision

In her decision, ALJ Campbell applied the familiar, five-step sequential test for determining disability.  At step one, she found that plaintiff had not engaged in substantial gainful activity during the relevant period.  Proceeding to step two, ALJ Campbell determined that plaintiff suffers from severe impairments that impose more than minimal limitations on her ability to perform basic work functions, including bipolar disorder, generalized anxiety disorder, cannabis use disorder, and borderline personality disorder.  ALJ Campbell further found that plaintiff's obesity and high cholesterol do not constitute severe impairments.

At step three, ALJ Campbell examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of those listed conditions, specifically considering Listings 12.04, 12.06, and 12.08.

ALJ Campbell next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following

physical and mental limitations:

> claimant must never climb ladders, ropes, or scaffolds or be exposed to unprotected heights or hazardous work environments.  The claimant is limited to remembering and carrying out simple, routine tasks and making simple work-related decisions.  The claimant cannot perform production pace tasks that require strict hourly goals.  The claimant is able to tolerate frequent contact with supervisors and occasional contact with co-workers, and brief, incidental contact with the general public.  The claimant is expected to be off-task 5 percent of the workday.

At step four, ALJ Campbell found that plaintiff did not have any past relevant work to be considered.  Proceeding to step five, the ALJ elicited the testimony of a vocational expert regarding the extent to which plaintiff's limitations impact the occupations that she can perform, and concluded, based on the vocational expert's testimony, that plaintiff remains able to perform available work in the national economy, citing as representative positions dishwasher, laundry laborer, and housekeeping cleaner.  Based upon these findings, ALJ Campbell concluded that plaintiff was not disabled at the relevant times.

C.    This Action

Plaintiff commenced this action on December 9, 2020.[3]  In support of

---

[3]     This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18.

her challenge to the ALJ's determination, plaintiff argues that (1) the ALJ erred in failing to include a limitation regarding the need for absenteeism based on an erroneous assessment of the opinion evidence, (2) the ALJ failed to account for the full range of time off-task supported by the evidence and failed to explain the basis for her finding that plaintiff would need to be off-task only five percent of the workday; and (3) the ALJ did not adequately explain the basis for the differing degrees of social limitations that she included in the RFC finding.  Dkt. No. 16.

Oral argument was conducted in this matter, by telephone, on July 19, 2022, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d

_____

Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a

reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

B.    Disability Determination: The Five-Step Evaluation Process

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R.

9

§§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).  If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence in three respects: (1) the ALJ erred in failing to include a limitation related to absenteeism based on the opinion evidence in the record; (2) the ALJ failed to explain how she determined that plaintiff would be off-task only five percent of the workday which, plaintiff argues, is not sufficient to account for the need for off-task time supported by the record; and (3) the ALJ failed to explain her conclusion regarding the social interaction limitations that were included in the RFC finding. Dkt. No. 16.

1.    Absenteeism

Plaintiff first argues that the ALJ erred in failing to include a limitation related to absenteeism because "[t]he two medical opinions and the

11

treatment evidence supported a limitation relating to Plaintiff's inability to consistently attend work," asserting that (1) the ALJ provided improper reasons for finding the opinion of consultative examiner Dr. Corey Anne Grassl, who opined that plaintiff is markedly limited in her ability to sustain regular attendance at work, to be unpersuasive, and (2) the ALJ failed to consider the opinion of nonexamining state agency psychiatric consultant Dr. C. Walker, who found that plaintiff was moderately limited in concentrating, persisting, or maintaining pace and in performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances.  Dkt. No. 16, at 11.

Because plaintiff's application was filed after March 27, 2017, this case is subject to the amended regulations regarding opinion evidence. Under those regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), . . . including those from your medical sources," but rather will consider whether those opinions are persuasive by primarily considering whether the opinions are supported by and consistent with the record in the case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule").  An ALJ must

12

articulate in his or her determination as to how persuasive he or she finds all of the medical opinions and explain how he or she considered the supportability[4] and consistency[5] of those opinions.  20 C.F.R. § 416.920c(b).  The ALJ also may – but is not required to – explain how he or she considered the other relevant enumerated factors related to the source's relationship with the claimant, including the length of any treatment relationship, the frequency of examinations by the source and the purpose and extent of the treatment relationship, whether the source had an examining relationship with the claimant, whether the source specializes in an area of care, and any other factors that are relevant to the persuasiveness of that source's opinion.  20 C.F.R. § 416.920c(c).

In August of 2018, after conducting an examination of plaintiff, Dr. Grassl opined that plaintiff shows no evidence of limitations in her abilities to understand, remember or apply simple or complex directions and

---

[4]     On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. § 416.920c(c)(1).

[5]     On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).

instructions, use reason or judgment to make work-related decisions, interact appropriately with supervisors, coworkers, and the public, sustain concentration and perform at a consistent pace, maintain personal hygiene and appropriate attire, and be aware of normal hazards and take appropriate precautions.  AT 393.  Dr. Grassl further opined, however, that plaintiff is markedly limited in her abilities to ability to sustain an ordinary routine and regular attendance at work, regulate emotions, control behavior, and maintain wellbeing.  *Id.*  The ALJ found that Dr. Grassl's opinion is not persuasive because it is not consistent with her own examination findings and the marked limitations opined are inconsistent with plaintiff's recent cessation of participation in mental health treatment. AT 29.

In October of 2018, Dr. Walker, after reviewing the available evidence, including Dr. Grassl's consultative examination report, opined that, despite some evidence of functional limitations, plaintiff remains able to understand and remember simple and complex instructions and work procedures, complete routine tasks at a reasonable pace, work with people sufficient to sustain employment, and cope with basic changes and make routine decisions.  AT 80-81.  The ALJ found that Dr. Walker's opinion is generally persuasive because it is largely consistent with the medical

evidence of record, although the evidence supports that plaintiff is only mildly limited in her ability to adapt and is largely independent in her activities of daily living.  AT 29.

Plaintiff's argument that the opinions of Dr. Grassl and Dr. Walker are consistent with one another regarding absenteeism, thereby requiring that the ALJ provide an overwhelmingly compelling reason to reject such a limitation, is unavailing.  Dkt. No. 16, at 13-14.  To the extent that the "overwhelmingly compelling" standard remains applicable to cases governed by the amended regulations for assessing opinion evidence, it is well-established that it only applies where the medical opinion evidence is "uncontradicted."  *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009). That is not the case here.  Dr. Grassl opined a marked limitation in plaintiff's ability to sustain an ordinary routine and regular attendance at work, regulate emotions, control behavior, and maintain wellbeing.  AT 393. By contrast, Dr. Walker, in his worksheet, noted that plaintiff is at most "moderately limited" in any similar areas of functioning, and overall opined that plaintiff nonetheless can deal with simple and complex instructions and procedures, does not have significant deficits in her ability to complete routine tasks at a reasonable pace, can interact with others to maintain sustained employment, and is able to cope with basic work changes and

make routine decisions.  AT 80-81.  Because the opinions of Dr. Grassl and

Dr. Walker do not describe the same degree of limitation, they are not

"uncontradicted" and thus do not implicate the need for an overwhelmingly

compelling reason to justify the ALJ's choice not to adopt them.  *See*

*Danielle C. v. Kijakazi*, 20-CV-1134, 2022 WL 813874, at *3 (N.D.N.Y. Mar.

17, 2022) (Stewart, M.J.) (finding the overwhelmingly compelling standard

did not apply in a case where the ALJ weighed multiple somewhat

contradictory opinions when formulating the RFC); *Tamara M. v. Saul*, 19-

CV-1138, 2021 WL 1198359, at *8 (N.D.N.Y. Mar. 30, 2021) (Hummel,

M.J.) (finding that opinions regarding off-task/attendance were not

uncontradicted because all the opinions "diverge on the question of

severity" of the specific limitation).

As to Dr. Grassl's opinion, plaintiff argues that the ALJ's finding that it

is not persuasive is "too conclusory" and is not supported by substantial

evidence.  Dkt. No. 16, at 12.  I acknowledge that the ALJ's assessment of

the consistency factor leaves much to be desired, given that she only

explicitly cited the fact that plaintiff had stopped participating in mental

health treatment to contradict Dr. Grassl's marked findings.  AT 29.

However, this lack of elucidation is not necessarily fatal, as the ALJ's

decision must be read as a whole.  Notably, in the same paragraph, in

discussing the opinion of Dr. Walker, the ALJ noted that the record supported only "mild limitations in adaptation" because "the evidence indicates that the claimant is largely independent in her activities of daily living," and found that the level of limitation opined by Dr. Walker "is largely consistent with the medical evidence of record." AT 29. Given that Dr. Walker did not opine a need for absenteeism, as was discussed above and will be addressed more fully below, this leads to an inference that the ALJ found that Dr. Grassl's opinion is not largely consistent with the medical evidence of record.

Plaintiff argues that the ALJ's assessment of inconsistency as to both Dr. Grassl's and Dr. Walker's opinions is contradicted by the treatment records, yet the only evidence she cites in support of that argument involves her own self-reports. Dkt. No. 16, at 14-15. Notably, treatment records from June 2018 through February 2019 reveal that plaintiff was experiencing less symptoms and doing well when on her prescribed medications. AT 324, 333-34, 503, 505, 507. In March of 2019, she reported a worsening in her energy levels, but also acknowledged that she had been staying up very late and sleeping in the day because that schedule worked best for her social life; she was observed to have a normal mood and affect nonetheless. AT 414, 509. Plaintiff was noted to

have a period of worsening anxiety and depression with the need for medication adjustments in August and September of 2019, but it was noted that she was future-focused and planning to restart a healthy routine after spending approximately six weeks with her cousin during which they mostly spent time at home and smoked marijuana, causing her to become dysregulated and overwhelmed.  AT 421, 511, 514.  In October of 2019, plaintiff reported experiencing boredom and low mood, but it was noted that she had not yet pursued a healthy routine or self-care activities and was not attending her therapy group, although she acknowledged that going for a run that morning had improved her mood.  AT 516.  In December of 2019, it was noted that she had not attended several appointments with her therapist, but was still on medication and seeing her psychiatrist monthly.  AT 432.  Based on the evidence, I cannot say that the ALJ's finding that Dr. Grassl's opinion of marked limitations is inconsistent with the medical evidence represents an unreasonable assessment.

The ALJ also specifically found that Dr. Grassl's opinion is not consistent with her own examination findings, which showed that plaintiff was mildly anxious, but otherwise did not reveal any objective abnormalities; indeed, plaintiff was observed to have intact concentration, attention, and memory despite her anxiety.  AT 392-93.  Because the report

of Dr. Grassl's examination contains no indication of the basis for her opinion regarding difficulties maintaining attendance or routine, other than her notations of plaintiff's self-reports that she had poor attendance at work in the past and that she cannot do tasks such as shopping, driving, or taking public transportation due to her anxiety, it appears that her opinion in that respect was based not on her objective examination, but rather those self-reports. Although Dr. Grassl stated that her mental status examination findings were consistent with "the claimant's vocational history," this does not suggest how observed mild anxiety would lead to a marked difficulty sustaining an ordinary routine and regular attendance at work.[6]  AT 393. The ALJ specifically concluded in another part of the decision that plaintiff's statements concerning the intensity, persistence and limiting effects of her

---

[6]     I note that it appears from the record that plaintiff did not start taking psychiatric medication until the same month during which she reported her most recent job ended, which was April of 2018. Specifically, a treatment record from April 8, 2018 indicates that plaintiff agreed at that time to start a prescription for Zoloft, and the next-dated record from June of 2018 recorded that plaintiff reported improvements on Zoloft that were then augmented by the addition of Wellbutrin. AT 324, 495, 503. Indeed, Zoloft was ceased at some point in January 2019 and she requested the next month to restart it because she thought it had been controlling her anxiety better. AT 507. It was restarted in February 2019 and was then increased in August of 2019 in response to reports of increased anxiety. AT 507, 511. Plaintiff then continued to report anxiety in September of 2019 in the context of becoming dysregulated after spending significant time with her cousin smoking marijuana, although she admitted she needed to return to a healthy routine. AT 514. Because psychiatric medication, along with other lifestyle factors, appear to have helped plaintiff's anxiety symptoms, it is not clear that her work history from times when she was not taking medications is particularly elucidating regarding her ability to function when receiving proper treatment.

symptoms are not entirely consistent with the medical and other evidence. AT 28.  Plaintiff also challenges this finding, arguing that (1) the ALJ misrepresented plaintiff's reported activities and (2) inappropriately relied on her failure to attend therapy.  Dkt. No. 16, at 16-18.

First, plaintiff broadly argues that the ALJ failed to account for the full range of limitations in her reported daily activities and relies too heavily on activities that do not suggest an ability to work on a full-time consistent basis.  However, plaintiff's argument misses the mark because the ALJ did not misrepresent the reported activities in any material respect by omitting certain details.  Plaintiff alleges a phobia of vomiting that prevents her from being around anyone who might be sick, yet she is able to attend movies in a theater at least once or twice per year; plaintiff notably testified that she will go to the movie theatre with her parents or boyfriend if there is a movie she really wants to see and they go to a theatre where there are less people.  AT 45-47, 55-57.  She indicated to Dr. Grassl that she does not drive or take public transportation because of her anxiety, yet also reported being able to take a plane to Disney and a bus to and from New Jersey to spend time with her cousin without incident.  AT 46-47, 63.  Plaintiff reported being in a long-term relationship with her boyfriend that admittedly presented some interpersonal difficulties at times, but they were able to

resolve their issues sufficiently to stay together.  AT 49-50, 511.  The ALJ

did not misrepresent these reported activities and did not err in relying on

them to suggest inconsistencies with plaintiff's other, more extreme

allegations of restrictions related to anxiety and getting along with people.

*See* SSR 16-3p (stating that, in assessing an individual's statements, the

factfinder will consider the consistency of those statements and compare

them with other statements made by the individual).  To the extent that the

ALJ's decision suggests that she may have relied on any of the above

activities when finding that plaintiff can perform the range of work specified

in the RFC, any error in doing so would be harmless, because the ALJ did

not rely solely on those activities to support that finding, but instead also

considered the medical evidence as a whole and the opinion of Dr. Walker,

and that other evidence constitutes substantial evidence to support the

ALJ's decision.

Second, and more relevant to the assessment of Dr. Grassl's opinion,

the ALJ also noted instances of noncompliance with treatment and

recommendations of her providers.  Specifically, the ALJ highlighted the

fact that plaintiff had a significant history of marijuana use with no evidence

of inpatient treatment, and her reports of continued use despite instructions

from her providers to stop smoking marijuana.  AT 29.  Notably, the record

indicates that plaintiff herself acknowledged that marijuana was likely exacerbating her anxiety, yet, other than a few periods of abstinence, she continued to use marijuana, including during the six weeks she spent in New Jersey with her cousin when she reported a sharp decline in her mental health.  AT 332-35, 366, 453, 514.  Plaintiff notably reported at the hearing that she had finally stopped using marijuana because it was making her symptoms worse.  AT 57.  The ALJ also noted that there was some question as to whether plaintiff was always compliant with her prescribed mental health medications, and discussed that she had not been attending appointments with her therapist for a period of time preceding December 2019.  AT 29.

Plaintiff is correct that the ALJ did not discuss her testimony at the hearing, wherein she provided explanations for why she had missed her therapy sessions in later 2019.  Notably, plaintiff testified that she has been missing appointments with her therapist due to having difficulty getting out of bed, anxiety about being around people for a group session, and because she had difficulty doing the writing exercises they provided as homework and that work was piling up too much.  AT 53-56.  Plaintiff also reported that she frequently stays in bed all day sleeping because she stays up all night, which in one treatment note she attributed to her social

life.  AT 51, 58, 509.

In this instance, however, the ALJ's failure to explicitly discuss the provided reasons for noncompliance is harmless for multiple reasons.  As to plaintiff's argument that the fact that plaintiff had a diagnosis of bipolar disorder means that her compliance should be attributed to her mental disorder itself, plaintiff has not cited any evidence that supports that her bipolar disorder was a cause of her noncompliance.  Rather, plaintiff's own testimony indicates it was because she had difficulty getting out of bed, in part due to the effects of staying up late for social reasons, anxiety around attending group therapy in particular, and difficulty writing for her therapy homework.  Further, considering the reasons provided by the plaintiff in the record for her failure to attend therapy in particular, I do not believe that explicit consideration by the ALJ would have altered the outcome here.  As was discussed above, plaintiff testified that she has difficulty getting out of her bed for appointments and that she usually sleeps until three or four in the afternoon, but that is because she does not fall asleep until three or four in the morning, which she reported in March of 2019 was due to that schedule being better for her social life.  AT 53, 58-59, 509.  She also reported that she did not like attending her group therapy because she had a hard time completing the writing tasks required by the homework "for

23

some reason" and the work "started piling up and [she] just stopped going." AT 55-56. There is no indication that her inability to complete this work was a result of her mental health impairments, or any explanation why she did not attend sessions simply without completing the homework. Plaintiff also reported that she stopped attending her group therapy because she was "nervous" about the fact there were other people in the group. AT 55. However, the ALJ found that plaintiff overall had only moderate limitations in her ability to interact with others and found persuasive the opinion from Dr. Walker, who noted in his worksheet that plaintiff had only moderate limitations in her ability to interact with the general public and overall opined social limitations that would not preclude the ability to work. AT 70-80. The ALJ also noted plaintiff's ability to maintain a long-term relationship with her boyfriend, her good relationship with her mother, and the fact that she spent significant time with her cousin in New Jersey in 2019. AT 28-29. Overall, the evidence in the record simply does not establish a level of anxiety that would convince me that the ALJ would have changed her conclusion about the impact of plaintiff's noncompliance with attending therapy had she engaged in a more thorough assessment of the provided reasons for that noncompliance. Lastly, even if the ALJ improperly relied on such noncompliance with therapy without first considering the reasons

for that noncompliance, the balance of the ALJ's decision, as was discussed above, makes clear that the ALJ at least implicitly found that Dr. Grassl's opinion was inconsistent with the record, and such inconsistency with the medical evidence constitutes a valid reason for finding her opinion to be unpersuasive.

Plaintiff also argues that the ALJ failed to appropriately articulate her findings regarding the supportability and consistency of Dr. Walker's prior administrative medical finding.  Dkt. No. 16, at 14.  Specifically, plaintiff argues that the ALJ's statement that Dr. Walker's prior administrative medical finding "is largely consistent with the medical evidence of record" and a citation to her "largely independent activities of daily living" is too vague in that it does not indicate what evidence supports or is consistent with that opinion.  *Id.*  I find this argument unavailing in this case.  Although there certainly are cases reflecting that such a generic statement would not suffice to allow for meaningful review of the basis for the ALJ's findings, *see e.g., Loucks v. Kijakazi*, 2022 WL 2189293 (2d Cir. 2022), here, with a fairly modest medical record, it is not difficult to glean what evidence underlies and supports the ALJ's conclusions, including as to the assessment of Dr. Walker's opinion.  Dr. Walker additionally provided both a discussion of the evidence upon which he relied, which was chiefly Dr.

Grassl's examination, as well as his worksheet of how he rated certain areas of functioning when formulating his ultimate prior administrative medical finding.  AT 76-81.  Because plaintiff has not pointed to objective medical evidence, or other persuasive evidence, to show that the ALJ's finding regarding the supportability and consistency of Dr. Walker's conclusions was erroneous, I find that plaintiff has not persuasively shown any error.  I also note that the ALJ did not merely adopt Dr. Walker's opinion in formulating the RFC, but rather included limitations that were in many cases far more restrictive.  Given that the RFC finding is more restrictive than Dr. Walker's opinion, any error the ALJ may have committed in explaining her assessment of that opinion is essentially harmless.[7]

For all of the above reasons, I find that the ALJ did not commit any reversable error in her assessment of the opinion evidence in general, but also particularly as to the need for absenteeism.

    2.   <u>Off-Task Time</u>

---

[7]    Although plaintiff argues that the "moderate" limitations in the areas of sustaining an ordinary routine, performing within a schedule, and maintaining regular attendance are more favorable opined limitations, such limitations are found within the worksheet of Dr. Walker's prior administrative medical finding form, not the opinion section of that form, and he ultimately did not include any limitation for absenteeism in his prior administrative medical finding.  As such, contrary to plaintiff's argument, Dr. Walker's prior administrative medical finding does not support a limitation for absenteeism.

Plaintiff next argues that the ALJ's finding that she would be off-task only five percent of the workday is not grounded in any opinion or other evidence, and meaningful review is precluded because the ALJ did not explain how she arrived at her conclusion as to that specific number.  Dkt. No. 16, at 20-22.  Specifically, plaintiff maintains that the ALJ substituted her own judgment for that of Dr. Walker, because Dr. Walker noted that plaintiff was "moderately limited" in her abilities regarding maintaining attention and concentration for extended periods, sustaining an ordinary routine, and working closely to others without being distracted, further arguing that such a moderate limitation is suggestive of more than five percent of the workday.  *Id.*

Plaintiff's argument is based on an incomplete reading of Dr. Walker's prior administrative medical finding.  Although Dr. Walker did note that plaintiff is "moderately limited" in certain areas on his mental residual functional capacity ("MRFC") worksheet, in the narrative portion of the form that contained his or her opinion, Dr. Walker indicated that "[a]lthough the claimant may have lapses in focus, motivation and reliability, the frequency, intensity and duration of these occurrences would not be expected to substantially detract from the claimant's ability to complete routine tasks at a reasonable pace."  AT 79-81.  Thus, although Dr. Walker did not

27

specifically quantify plaintiff's off-task time at five percent of the workday, it is clear that he or she opined that plaintiff would not be off-task to an extent that would preclude her from performing work tasks as required at a reasonable pace.  Given that the ALJ found this opinion to be generally persuasive, the ALJ's decision provides sufficient indication that the ALJ interpreted Dr. Walker's opinion as being generally consistent with being off-task no more than five percent of the workday, and I cannot say that such an interpretation is patently unreasonable.  Additionally, although the ALJ found that Dr. Grassl's opinion was not particularly persuasive, I note also that Dr. Grassl opined that plaintiff has no evidence of limitations in her ability to sustain concentration and perform tasks at a consistent pace, and that her examination revealed intact attention and concentration despite evidence of anxiety.  AT 392-93.

It therefore appears that the ALJ's finding is nominally supported by the opinion evidence, and a review of the remainder of the record does not reveal evidence that would significantly call into question the ALJ finding in this regard.[8]  Although plaintiff generally reports difficulty focusing or

---

[8]     At oral argument, plaintiff cited to *Cassandra A. v. Kijakazi*, 21-CV-0007, 2022 WL 1597680 (N.D.N.Y. May 19, 2022) (Baxter, M.J.), in support of her argument for remand.  That case, however, is distinguishable.  In *Cassandra A.*, the ALJ rejected opinions from multiple treating physicians who specifically opined plaintiff would require significant off-task time and relied instead on an opinion from a nonexamining state agency consultant that plaintiff could perform sustained work activity.  2022 WL

concentrating, the medical evidence does not typically document any such reports and providers do not note any observed difficulties with attention or concentration.  *See e.g.*, AT 414, 503, 505, 507, 509, 511, 514, 516. Because plaintiff points to no other evidence to suggest a greater limitation was warranted other than her own contrary interpretation of Dr. Walker's findings, I find that plaintiff has not shown that the ALJ's interpretation of Dr. Walker's opinion was unreasonable or that there is a reasonable basis for doubting whether the limitation included by the ALJ encompasses plaintiff's documented deficits in functioning.  Because the ALJ therefore does not appear to have merely relied on her own judgment and her decision is not so devoid of explanation on this matter as to prevent me from being able to glean the rationale behind the finding, I find no error in the ALJ's inclusion of a limitation for being off-task for five percent of the workday.

### 3.   Social Interaction

Plaintiff lastly argues that the ALJ's findings regarding her ability to interact with supervisors, coworkers and the general public, and in

---

1597680, at *7-8.  This court found there that, although a nonexamining source's opinion can be relied upon in a general sense, the circumstances of the evidence and the ALJ's unclear reasons for rejecting the treating physicians' findings indicated that that opinion did not constitute substantial evidence in that case.  *Id.*  Here, the only other opinion in the record does not reveal any need to be off-task and the evidence as a whole does not suggest significant issues with concentration or attention.

particular the distinctions drawn between those three categories of people, is not supported by substantial evidence because the ALJ did not explain why she determined that plaintiff is able to interact with supervisors more often than coworkers, and with coworkers more often than with the public. Dkt. No. 16, at 22-25.  In her RFC determination, the ALJ found that plaintiff can tolerate frequent contact with supervisors, occasional contact with coworkers, and only brief incidental contact with the general public.  AT 27.

Although the ALJ did not provide a specific explanation for finding differing degrees of interaction among the listed groups, plaintiff has not shown how any error in failing to do so is harmful in this case.  As was discussed above, the ALJ found that the opinion from Dr. Walker is generally persuasive.  AT 27.  In the worksheet preceding his or her prior administrative finding, Dr. Walker noted that plaintiff is "moderately limited" in her ability to interact appropriately with the general public, but "not significantly limited" in either accepting instructions from or responding appropriately to criticism from supervisors and getting along with coworkers or peers.  AT 79-80.  Dr. Walker opined that, overall, although plaintiff might have some difficulties in the domain of social interaction, both recent evidence and her work history suggested that she has the capacity for sustained employment in terms of social abilities.  AT 81.  The only other

medical opinion in the record, from consultative examiner Dr. Grassl, found no limitations in plaintiff's ability to interact with supervisors, coworkers or the public.  AT 393.  The opinion evidence in this case is therefore across-the-board less restrictive in terms of social functioning than any of the limitations ultimately included by the ALJ.  Additionally, plaintiff has not pointed to evidence persuasively suggesting that her abilities to interact with any of these groups should have been found to be more limited. Although there certainly were reports of occasional interpersonal conflict with plaintiff's boyfriend, family, or friends, and intermittent or avoidant eye contact on some visits with her providers, the record here would not require a factfinder to find greater limitations than those that were already accounted for.  Notably, the ALJ pointed to the fact that there was no evidence of any significant behavioral issues between plaintiff and her treatment providers, that plaintiff was able to maintain a lengthy relationship with her boyfriend despite occasional conflicts, and that she had been able to spend a few weeks with her cousin during the fall of 2019.  AT 26.

Considering the record as a whole and the ALJ's decision, I see no evidence that would have required the ALJ to include greater limitations in this area, and therefore any error the ALJ may have committed in failing to explain exactly what evidence supports his findings regarding interactions

31

with each specific group of people is merely harmless and does not impact the outcome of this case.

IV.    <u>SUMMARY AND ORDER</u>

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I find that the determination resulted from the application of proper legal principles and is supported by substantial evidence.  Accordingly, it is hereby

ORDERED that defendant's motion for judgment on the pleadings (Dkt. No. 22) be GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 16) be DENIED, the Commissioner's decision be AFFIRMED, and plaintiff's complaint be DISMISSED; and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:    July 22, 2022
          Syracuse, NY
                                    DAVID E. PEEBLES
                                    U.S. Magistrate Judge